UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NORTH AMERICAN AIRLINES, INC.,

                    Plaintiff,

  -v-

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, AFL-CIO and TEAMSTERS
LOCAL 747, AIRLINE DIVISION,
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, AFL-CIO,

                    Defendants.

Case No. 04-CV-9949 (KMK)

ORDER AND OPINION

---

APPEARANCES:

Evan J. Spelfogel, Esq.
Steven M. Latino, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177
*Counsel for Plaintiff*

Barry I. Levy, Esq.
Barry S. Cohen, Esq.
Shapiro, Beilly, Rosenberg, Aronowitz,
Levy & Fox, LLP
225 Broadway, 13th Floor
New York, New York 10007
*Counsel for Defendants*

William R. Wilder, Esq.
Baptiste & Wilder, P.C.
1150 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20036
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

I. Introduction

In *North American Airlines v. International Brotherhood of Teamsters*, No. 04 Civ. 9949, 2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) ("*North American I*"), this Court dismissed the above captioned action for lack of subject matter jurisdiction and, in the alternative, as an imprudent exercise of its discretionary authority under the Declaratory Judgment Act. For purposes of the instant motion, the Court assumes familiarity with that decision. Ten days after that opinion was issued, and eight days after Plaintiff North American Airlines ("North American") filed a notice of appeal, North American filed a motion for a "stay pending appeal" "[p]ursuant to [Fed. R. Civ. P.] 62 and 65(a)(1)." (North American Mem. at 1) While North American does not specify which section of Rule 62 it intends to invoke, by referring to Rule 65(a)(1) and by explicitly requesting a preliminary injunction in its supporting memorandum of law (North American Mem. at 12), it appears that North American seeks to enjoin the International Brotherhood of Teamsters ("IBT" or "Union") from continuing to prosecute the parallel action in the Northern District of California ("California Action"), pursuant to Rule 62(c),[1] pending resolution of the appeal from the motion to dismiss. (North American Mem. at

---

[1] Rule 62(c) provides, in pertinent part:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party. . . .

Fed. R. Civ. P. 62(c).

No other subdivision of Rule 62 appears to even conceivably apply. Rule 62(a) governs

12) For the reasons outlined below, the motion to stay is DENIED.

## II. Discussion

When a notice of appeal is filed, jurisdiction over the matters being appealed normally transfers from the district court to the appeals court. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) ("In general, filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal."). An exception exists under the Federal Rules of Civil Procedure,

---

automatic stays, providing that "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry." Fed. R. Civ. P. 62(a). Nothing in North American's submissions even suggests that it seeks an automatic stay. Moreover, Rule 62(a) explicitly excepts "action[s] for an injunction." Fed. R. Civ. P. 62(a); *see also* 11 Charles A. Wright et al., Federal Practice & Procedure § 2902 (2d ed. 2005) ("Thus the automatic stay does not apply [to actions for an injunction], nor can a stay pending appeal be obtained in these cases merely by filing a supersedeas bond."); *id.* § 2904 ("There is no automatic stay in actions for injunctions . . . ."). Rather, the provision governing a stay of an injunctive action is Rule 62(c). *See* Fed. R. Civ. P. 62(a) ("The provisions of subdivision (c) of this rule govern the suspending, modifying, restoring, or granting of an injunction during the pendency of an appeal."); Wright et al., *supra*, § 2902 (noting that while automatic stay does not apply to injunction cases, "the trial court, under Rule 62(c) . . . ha[s] ample power to make whatever order is appropriate in injunction cases . . .").

Arguably, North American's Complaint is not an "action for an injunction" within the meaning of Rule 62(a). Rather, the Complaint sought declaratory relief, and the Court in *North American I* never reached North American's motion for an injunction of the California Action, concluding it had no jurisdiction to reach that question. To the extent, however, this is not an "action for an injunction" under Rule 62(a), then Rule 62(c) relief would also not be available since that subdivision applies only to a "judgment granting, dissolving, or denying an injunction." Fed. R. Civ. P. 62(c).

The remaining subdivisions are inapplicable on their face, and are therefore not discussed in detail. Indeed, while it appears from the notice of motion that North American only requests a "stay pending appeal," merely staying this Court's decision pending appeal would not have the effect of enjoining the California Action. As a result, despite North American's failure to articulate the provision under which it seeks relief, it appears clear that only Rule 62(c) arguably applies.

3

however, that allows the district court to retain jurisdiction to issue an order to preserve the status quo pending appeal.

"A motion to stay is governed by Federal Rule of Civil Procedure 62(c). Issuance of a stay pending appeal is discretionary and equitable . . . ." *Hayes v. City Univ. of New York*, 503 F. Supp. 946, 962 (S.D.N.Y. 1980), *aff'd*, *Hayes v. Human Res. Admin. of City of New York*, 648 F.2d 110 (2d Cir. 1981). "Four criteria are relevant in considering whether to issue a stay of an order of a district court . . . pending appeal: the likelihood of success on the merits, irreparable injury if the stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest." *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002); *see also In re Suprema Specialities, Inc.*, No. M-47, 2005 WL 120352, at *1 (S.D.N.Y. Jan. 20, 2005). After examining these factors, the Court concludes that the motion to stay should be denied.

A. Likelihood of Success on the Merits

"Although historically there has been much uncertainty about how likely the movant's chances of success must be to warrant a stay, the Second Circuit has recently approved an approach that relates the likelihood of prevailing to the other considerations: '[t]he necessary level or degree of possibility of success will vary according to the court's assessment of the other [stay] factors.'" *Greenidge v. Allstate Ins. Co.*, No. 02 Civ. 9796, 2003 WL 22871905, at *2 (S.D.N.Y. Dec. 3, 2003) (quoting *Mohammed*, 309 F.3d at 101) (additional citations and quotations omitted). Accordingly, a stay may be granted where "the likelihood of success is not high but the balance of hardships favors the applicant . . . and where the probability of success is 'high' and 'some injury' has been shown." *Mohammed*, 309 F.3d at 101 (internal citations omitted); *see also In re Suprema Specialties*, 2005 WL 120352, at *1. Because as discussed

4

below the irreparable harm is minimal, the probability of success must be high in order for North American to prevail on its claim. *Cayuga Indian Nation of New York v. Vill. of Union Springs*, 317 F. Supp. 2d 152, 155 (N.D.N.Y. 2004) ("[A] strong showing of likelihood of success is required where irreparable injury is not very evident."). "Mere repetition of arguments previously considered and rejected cannot be characterized as a 'strong showing' [of likelihood of success on the merits]." *Schwartz v. Dolan*, 159 F.R.D. 380, 384 (N.D.N.Y. 1995), *judgment vacated in part*, 86 F.3d 315, 318 (2d Cir. 1996) (noting that it also denied stay pending appeal).

North American advances three arguments in support of its claim that this Court erred in *North American I*, and therefore that North American is likely to succeed on the merits of its appeal: (1) North American maintains that the Declaratory Judgment Act operates only prospectively, thereby suggesting that this Court erred in ruling that its declaratory judgment action was premature; (2) North American suggests the Court discounted the threat of litigation, a claim that also relates to the Court's ruling that it lacked jurisdiction; and (3) North American argues the Court abused its discretion in suggesting that "the New York litigation should be stopped in its tracks because it threatens judicial interference with ongoing labor negotiations" (North American Reply Mem. at 5), a claim that relates to the Court's separate ruling that it would not exercise its discretion under the Declaratory Judgment Act to keep the case.[2]

---

[2] North American repeats several other arguments previously presented and rejected by this Court. For example, North American suggests it has shown a reasonable apprehension of self-help (North American Mem. at 5-10), and that the Court incorrectly found the California Action more comprehensive (North American Mem. at 11-12). The Court has already rejected these arguments. *See North American I*, 2005 WL 646350, at *13-*16 (rejecting self-help argument); *id.* at *18-*21 (concluding California Action is more comprehensive). Because North American merely reiterates previously presented arguments, providing no new analysis or citation to authority, the Court does not re-examine these arguments herein.

5

First, North American argues that the "Declaratory Judgment [Act] operates prospectively only and is not available with respect to changes already implemented or to determine liability for past actions." (North American Reply Mem. at 2) The implication of North American's argument seems to be that because a declaratory judgment operates *only* prospectively, North American could not have obtained declaratory relief after adopting unilateral changes to the terms and conditions of the employment of the unionized pilots. Thus, according to this view, the Court erred in ruling that there was no actual controversy since no unilateral changes had been adopted. In fact, it appears that this premise may have guided North American's strategy in anticipation of this litigation. However, this supposition is flawed. North American cites no authority for the proposition that declaratory judgments can only operate as assumed by North American. On the contrary, parties routinely seek a declaration that their prior actions were permissible. For example, in *Kidder, Peabody & Co. v. Maxus Energy Corp.*, the Second Circuit affirmed the district court's entry of a judgment that the declaratory plaintiff had not violated certain provisions of the federal securities laws during a corporate merger that had been consummated approximately four years prior to the declaratory judgment action. 925 F.2d 556, 558-62 (2d Cir. 1991).

Second, North American suggests this Court improperly discounted the threat of litigation. North American argues that the threats by IBT were sufficient to create a reasonable apprehension of litigation by North American, and therefore established a case or controversy. (North American Mem. at 7)[3] In repeating the unsuccessful argument it initially made in

---

[3] North American writes, in a footnote, that "[t]he Court could have held, but opted not to hold an evidentiary hearing to take witness testimony on the disputed jurisdictional facts, electing rather to accept as true on the motion all jurisdictional facts submitted by [North

response to IBT's motion to dismiss, North American relies primarily on *Atlas Air, Inc. v. Airline Pilots Ass'n*, 69 F. Supp. 2d 155, 163 (D.D.C. 1999), *overruled on other grounds*, 232 F.3d 218 (D.C. Cir. 2000). However, that case, and, in particular its resolution on appeal, undermines North American's claim. In *Atlas Air*, the district court was asked to issue a declaratory judgment for two distinct claims: one relating to a specific unilateral change that the airline already had implemented before seeking declaratory relief, and the other relating to a general claim that the airline had a right under the Railway Labor Act ("RLA") to alter unilaterally the terms and conditions of the unionized employees' employment under the status quo provisions of the RLA. Regarding the first, the district court ruled that it had jurisdiction to consider the legality of the airline's already-implemented exclusion of only union members from the airline's profit sharing plan, in light of numerous threats from the union that it will take "all appropriate action" to counter "the Company's intimidation and coercion." 69 F. Supp. 2d at

---

American] and its complaint and supporting declarations." (North American Mem. at 7 n.8 (citing Opinion and Order pp. 13-14)) This statement erroneously implies that the Court somehow deprived the litigants of an opportunity to present evidence via an evidentiary hearing. The truth, however, is quite the contrary. The Court *sua sponte* raised the issue of whether an evidentiary hearing should be held at the oral argument. (Tr. 4) At argument, North American suggested that such a hearing was unnecessary to resolve any credibility issues, and that the written submissions were sufficient: "I think that I agree with Mr. Wilder [counsel for IBT] that after you hear summation and consider the issue, you will find that you can render decisions on the two basic fundamental issues, that of subject matter jurisdiction and whether there's an exception to the first-filed rule, without resolving those credibility issues." (Tr. 6-7) Furthermore, at the close of argument, the Court, while acknowledging that the parties did not believe the issue of an evidentiary hearing "need[s] to be resolved" (Tr. 85), invited the parties to submit a short letter on the propriety of such a hearing. Accordingly, North American submitted a letter on February 28, 2005. The letter did not advocate that a hearing should be held, but rather "assert[ed] that the record before the Court establishes, on the basis of non-disputed evidence, the existence of a case or controversy," and further argued that "[i]f . . . the Court disagrees, . . . that rather than conduct an evidentiary hearing or mini-trial solely with respect to judicial issues, the Court defer to trial ruling on the motion to dismiss . . . ." (Letter of Evan Spelfogel to the Court of 2/28/05, at 2)

7

163. However, the district court ruled that it had no jurisdiction to consider the airline's general claim that it was entitled to a declaratory judgment that it had the right to make unilateral changes to the terms and conditions of the unionized pilots' employment, specifically noting that any threats of litigation were not real or immediate "on any specific issue." *Id.* at 164. On appeal, the D.C. Circuit agreed with the district court on this second point, holding: "That a union may posture in labor negotiations or otherwise threaten to respond to *future* changes is insufficient to create a reasonable apprehension of litigation necessary for the claim to be justiciable." 232 F.3d at 227 (emphasis added). It is this latter holding that is most applicable to this case since IBT's threats related generally to North American's claim that it had a general right to make unilateral changes to the terms and conditions of the pilots' employment and to some future changes proposed by North American (some of which it later altered). And, since North American had not adopted, let alone implemented, any of the changes it had presented during the collective bargaining negotiations, its reliance on *Atlas Air* is misplaced.[4]

---

[4] Other aspects of the *Atlas Air* litigation further undermine North American's claims in this case. For example, the district court explicitly rejected the claim, repeated by North American in this motion (North American Mem. at 8), that any lawsuit filed later by the declaratory defendant in another jurisdiction substantiates the fear of litigation. 69 F. Supp. 2d at 163 n.7 ("The Court will not consider the subsequent lawsuit as evidence of apprehension . . . because the 'question of justiciability must be decided on the facts in existence at the time the suit was filed.'") (quoting *Federal Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 965 n.5 (D.C. Cir. 1995)).

Also, as discussed in *North American I*, the D.C. Circuit reversed the district court's order granting summary judgment that Atlas Air had the right to exclude only the unionized pilots from the profit sharing plan under the status quo provisions of the RLA, noting that this ruling ignored the "real question" of whether the changes violated other provisions of the RLA that proscribe discrimination against union members. 232 F.3d at 224. It was consideration of the same "real question" that the Court in this case held could not be considered in North American's lawsuit, but could be considered in the California Action, thus justifying dismissal of this case. *See North American I*, 2005 WL 646350, at *9-*10, *20.

Third, North American argues the court abused its discretion in suggesting that "the New York litigation should be stopped in its tracks because it threatens judicial interference with ongoing labor negotiations." (North American Reply Mem. at 5) North American misconstrues the Court's holding with respect to this point.[5] In *North American I*, this Court held that the case's "chronology leaves little doubt that North American prematurely abandoned the collective bargaining process embodied in the RLA to seek refuge in the courts . . . ," and that if North American is permitted to characterize narrow negotiating disputes as sufficient to create a case or controversy "either side in a collective bargaining negotiation could disrupt the negotiations by simply adopting a resolute philosophical position as to the legality of any one aspect of the negotiation . . . ." *North American I*, 2005 WL 646350, at *19. Thus, the Court's position was not that the New York litigation should be "stopped in its tracks because it threatens judicial interference," but rather that parties should not be allowed to use the declaratory remedy as

---

[5] North American also incorrectly suggests that "[t]he Court . . . misstates the number of bargaining sessions the parties had engaged in prior to the time North American filed its lawsuit. The correct number was 14, not 4, as set forth in the Order and Opinion at p. 5." (North American Mem. at 11 n.10) In *North American I*, the reference to "four" was to the number of bargaining *sessions*, as distinct from the number of individual days in each session, that had been held between the beginning of the collective bargaining negotiations and when North American first proposed the unilateral changes on November 5, 2004. In fact, the Court was clear in its tracking of the totality of the negotiating sessions that the parties conducted. *See North American I*, 2005 WL 646350, at *2 ("[C]ollective bargaining began on April 6, 2004. Additional bargaining sessions were held on June 22-23, July 28-29, September 22-24, November 9-11, December 7-9, and January 11-12, 2005."). The reference to four negotiating *sessions* was to the groups of days the parties met between April 6, when the negotiations began, and November 5, when North American first made its proposals regarding unilateral changes. *Id.* at *19 ("Moreover, while these negotiations had been proceeding for nearly seven months, only four negotiating *sessions* had been completed before the specific proposals regarding the terms and conditions of the pilots' employment had been introduced . . . .") (emphasis added). And, in fact, there were four such sessions – April 6, June 22-23, July 28-29, and September 22-24 – that took place over seven months – April to November. *Id.* at *2. Thus, the Court committed no error in its accounting of the bargaining sessions between North American and IBT.

9

leverage during ongoing negotiations. *See id.* ("The hazards of such legal maneuvering are obvious as parties could attempt to use the courts to manipulate the negotiating process . . . ."); *see also id.* at 17 (noting that the public interest "'does not require that the federal courts referee every tactical move in labor negotiations under the [RLA]'") (quoting *Indep. Fed'n of Flight Attendants v. TWA*, No. 81-6064, 1981 WL 2430, at *4 (W.D. Mo. Sept. 9, 1981)).

In evaluating the likelihood of North American's success on appeal, it is important to repeat that this Court dismissed North American's Complaint for two independent reasons—one because North American's Complaint failed to allege an actual case or controversy, and the other because the Court declined to exercise its discretion under the Declaratory Judgment Act to keep the case. To prevail on its appeal of this Court's discretionary determination to dismiss the case, North American will have the burden of showing an abuse of discretion. *See Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003). Given that the only basis North American asserts in support of this argument is the inaccurate claim that the Court assumed that North American had terminated its negotiations with IBT, it is apparent that North American is not likely to prevail on appeal, thus independently supporting denial of the instant motion. *Cf. Accident Fund v. Baerwaldt*, 579 F. Supp. 724, 726 (W.D. Mich. 1984) ("That this was a discretionary decision . . . , which will be reviewed by the Court of Appeals only for an abuse thereof, serves to strengthen my conviction that the decision will be affirmed. Plaintiffs have presented me with no new issues or arguments which I had not considered when making my ruling, nor have they brought to the Court's attention any factual inadequacy upon which the Court relied.").

B.  Irreparable Harm

Additionally, the Court concludes that North American will not suffer irreparable harm in the absence of the issuance of a stay. The Court notes initially that North American did not file this motion until ten days after the Court's decision was rendered, and eight days after the filing of the notice of appeal, thus undermining to some degree North American's claims of irreparable harm. *See Hirschfeld v. Spanakos*, 909 F. Supp. 174 (S.D.N.Y. 1995) ("As the Court of Appeals itself pointed out, the fact that such a delay severely undercuts a claim of irreparable injury, which is indispensable to the issuance of a stay, has been well established in this Circuit since at least 1989.") (citing *Hirschfeld v. Bd. of Elections in the City of New York*, 984 F.2d 35, 39 (2d Cir. 1993)).

Moreover, North American has failed to substantiate its claim that it will suffer irreparable harm if a stay is not granted. North American's primary argument in support of its claim for irreparable harm is that it "could be placed in a 'Catch-22' situation where it could be held in contempt by either the San Francisco or New York Federal Courts for complying with the other court's orders." (North American Mem. at 12) This argument is speculative and unpersuasive. It assumes, for example, that North American would be unsuccessful in seeking a stay in the California Action and that it will not prevail in its motion to dismiss or transfer that case. *See Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991) ("While the normal chronology would have been for the court of first impression . . . to have enjoined the second court, this procedure is not mandatory. The same policies are furthered by the second court's exercising judicial self-restraint."); *Accident Fund*, 579 F. Supp. at 728 ("An important consideration, apparently overlooked by Plaintiffs, is their freedom to seek injunctive relief in the state courts; a course of

action clearly contemplated by the *Pullman* and *Burford* absention [sic] doctrines. Denial of Plaintiffs' motion will not leave them without a forum for injunctive relief. Indeed, since I believe Plaintiffs will ultimately be proceeding on the merits of their claims in the state tribunals, seeking interim relief in that forum, at this time, would seem prudent. The availability of this alternate course of action strengthens my conclusion that denial of injunctive relief will cause Plaintiffs no irreparable injury."). Indeed, the only representation that North American has made about the status of the California Action is that IBT has asked the court in California to resume the proceedings. (North American Mem. at 13-14) No information has been provided about North American's response to IBT's application or the California court's decision on how to proceed. Thus, based on the record before this Court, it is far from clear that North American faces a real possibility of irreparable harm from the mere pendency of the California Action. *See Nat'l Fuel Gas Supply Corp. v. 138 Acres of Land in the Vill. of Springville, County of Erie, State of New York*, 186 F. Supp. 2d 339, 343 (W.D.N.Y. 2001) ("The fact that there may be 'parallel proceedings' in both state and federal court that *may* yield inconsistent results does not represent a threat of irreparable injury. Cases are legion where parallel proceedings, involving substantially the same parties contemporaneously litigating substantially the same issues in state and federal fora, take place. Parallel litigation, in and of itself, is not unusual in American jurisprudence.") (emphasis in original) (citations omitted).

    C. Substantial Injury to Party Opposing Stay

While not overwhelming, IBT has demonstrated some injury from further delay. As IBT explains, "[a] stay will further delay resolution of the parties' labor dispute and undermine the collective bargaining process. The pilots are currently working under reduced rates of pay, rules

and working conditions. Such changes alter the parties' collective bargaining by *de facto* requiring the pilots to negotiate back to where they were before they can achieve any gains from the terms of employment that were in effect at the time they voted in the union." (IBT Mem. at 7-8) Moreover, IBT persuasively argues that "continuing delay in the resolution of this dispute deprives the union of its opportunity to dispel the taint arising from the company's unilateral action [that was intended in part] to present the union as impotent and unable to achieve the pilots' goals." (IBT Mem. at 8)

Thus, contrary to North American's suggestion, the issuance of a preliminary injunction actually disrupts, rather than preserves, the status quo by denying IBT the opportunity to obtain relief in another forum, and further delaying the resolution of the issues presented in this case.

D. Public Interest

This case does not appear to implicate the public interest factor as it is essentially "a purely private litigation." *Greenidge*, 2003 WL 22871905, at *3. To the extent, however, this factor is implicated, the Court concludes it counsels against issuing an injunction. The primary concern advanced by North American is that "permitting the Union to prosecute its action in California while the appeal in this action is pending will irreparably harm the judicial process . . . [by] permit[ing] other district courts to usurp [this Court's] jurisdiction." (North American Mem. at 13) This argument is specious. Indeed, the contrary appears to be true—an injunction which freezes the California Action *despite* the Court's holding that it has no jurisdiction over the present action would harm the judicial process by ignoring the fundamental rule that courts are not to act without jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power

to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'") (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). Thus, this factor further counsels in favor of denying the motion.

### IV. Conclusion

For the reasons stated herein, North American's motion to stay and/or for an injunction pending appeal is DENIED.

SO ORDERED.

Dated: April 18, 2005
New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE